Village of Oak Lawn, a Municipal Corporation, and People of the State of Illinois, ex rel. Village of Oak Lawn, a Municipal Corporation, Plaintiff-Appellant, v. Village of Bridgeview, a Municipal Corporation, Edward J. Barrett, County Clerk of Cook County, Illinois, and P. J. Cullerton, Assessor of Cook County, Illinois, Defendants-Appellees.

Gen. No. 52,243.

First District, Fourth Division.

January 22, 1968.

Gerhardt J. Gliege and Louis F. Cainkar, of Chicago, for appellant.

Scariano, Gubbins and Pappas, of Chicago Heights, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiffs appeal from an order denying the prayer for relief in their petition for a writ of quo warranto [1] and

---

[1] The prayer also sought a declaration of the rights of the parties as well as injunctive relief against defendants Barrett and

validating the annexation by defendant village of an unincorporated area bounded by 93rd Street, Neva Avenue, 95th Street and Harlem Avenue.

The following facts have been stipulated:

On November 1, 1962, a majority of the electors and landowners of a territory including the disputed area hereinabove described brought a petition in the County Court under the Illinois Municipal Code [2] seeking annexation to the Village of Oak Lawn. On November 12, 1963, an order was entered approving the petition and submitting the question of annexation to the corporate authorities of Oak Lawn. No appeal was taken from this order. Six days later, on November 18, the owner of the disputed area filed a petition under section 7-1-7 of the Illinois Municipal Code [3] with the Village of Bridgeview seeking to annex the disputed area to Bridgeview. The same day Bridgeview passed an ordinance annexing this disputed area filed a petition under section 7-1-8 of the County Recorder's Office. On November 26 Oak Lawn passed an ordinance annexing the territory described in the court order including the disputed area. On December 23 certain residents of Oak Lawn petitioned the Village Board of Trustees to put the annexation to a popular

Cullerton. By agreement of the parties, all but the prayer for quo warranto were dismissed.

[2] Chapter 24, sections 7-1-2 to 7-1-6. The pertinent part of section 7-1-2 is:

A written petition signed by a majority of the owners of record of land in such territory, and also by a majority of the electors, if any, residing in such territory, shall be filed with the county clerk of the county in which the territory is located, . . .

[3] Chapter 24, section 7-1-8. The pertinent part is:

Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality and which territory has no electors residing therein, . . . may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory, . . . shall be filed with the municipal clerk.

referendum. The Trustees, however, found the petition invalid and had the annexation ordinance recorded on December 30, 1963. On January 9, 1964, a mandamus suit was filed to compel the Trustees to hold a referendum. On May 26, 1964, the Trustees agreed to hold the referendum and the suit was dismissed. The referendum was held on August 15, 1964, and three days later an ordinance was passed declaring that the vote had favored annexation.

The Stipulation of Facts further states that "this action in quo warranto is properly brought to test the annexation over the disputed territory."

Plaintiffs argue that an annexation petition could not be validly entertained by Bridgeview while a valid court order approving a petition seeking annexation to another municipality was in full force and effect. City of Countryside v. Village of LaGrange, 24 Ill2d 163, 180 NE2d 488, involves facts similar to those involved here. In that case a Countryside ordinance seeking the annexation of a territory to the north of the city was filed with the county court on February 23, 1961. On March 15 of that year LaGrange filed an annexation petition for the same territory. The court said at page 166:

> Since Countryside's annexation petition was on file in the county court prior to the purported annexation by the Village of LaGrange, it necessarily follows under the doctrine of the Touchette case that La Grange had no power or authority to effect an annexation of the same territory so long as Countryside's petition was on file and undefeated.

Defendants do not dispute this principle but argue that where the first petitioner for annexation unreasonably delays, he loses priority, citing People ex rel. Village of Worth v. Ihde, 23 Ill2d 63, 177 NE2d 313, and City of Countryside v. Village of LaGrange, supra. In Worth a petition for annexation was filed with the Village of

Chicago Ridge on November 23, 1957. On December 17 the Board of Trustees of Chicago Ridge held a meeting and tabled the matter "until further notice." On April 14, 1958, four and one-half months after proceedings with Chicago Ridge had been initiated and without Chicago Ridge having taken any steps to perfect the annexation, a petition was filed in the county court to incorporate the area into the City of Palos Hills. The court held that the four and one-half months of inaction resulted in the loss of priority in Chicago Ridge and, although Chicago Ridge had been first to file and first to perfect, that Palos Hills had jurisdiction of the disputed area. In Countryside, the validity of Countryside's annexation was challenged on the theory that the outstanding petition for annexation with the Village of McCook prevented Countryside's filing a valid petition for annexation with the county court. The Supreme Court pointed out that property owners of the area had filed a petition with the Village of McCook on June 8, 1960, and on February 23, 1961, when Countryside filed, over seven months had elapsed without McCook's taking any action on the petition. The court said at pages 167 and 168:

> . . . the long delay and inaction on the part of McCook deprived the Village of any priority which it might have acquired over the territory in question. The pendency of the McCook petition was therefore not a bar to Countryside's annexation and the property owners' objections to Countryside's petition should have been overruled.

Defendants argue that since more than a year elapsed between the filing of the Oak Lawn petition in the county court and the issuance of the order approving the petition, Oak Lawn lost its priority. In both Countryside and Worth the Supreme Court held that it was the "delay and inaction" of petitioners which caused a loss of priority. In the instant case after the petitioners filed suit, hear-

ings on objections were held and a final order of annexation entered. Although there were numerous continuances during the pendency of the case, we cannot find that the petitioners were guilty of inaction and delay since a final order was entered before Bridgeview passed its ordinance. Neither did the actions of Oak Lawn after the entry of the court order occasion delay or constitute "inaction." The annexation ordinance was passed fourteen days after the court order was entered, the petition for referendum filed by certain residents was promptly ruled upon and found to be invalid, and the ordinance was recorded on December 30, 1963. During the pendency of the mandamus suit against Oak Lawn which sought to require the Village to order a referendum in accordance with the petition previously filed, a referendum was ordered to be held on August 15, 1964, although the election could have been set for the next general municipal election on April 20, 1965.

Bridgeview next contends that Oak Lawn lost its priority because it failed to perfect its annexation ordinance. The Municipal Code (Ill Rev Stats 1963, c 24) provides in section 7–1–5 that after the corporate authorities approve an annexation "this decision shall be effective after the expiration of 30 days, unless a referendum thereon is ordered by the corporate authorities or unless a petition for such referendum is filed." Section 7–1–6 states in relevant part:

> If the vote is in favor of annexing territory the corporate authorities, of their own motion, may order a referendum on the question. If the corporate authorities reject annexation, or do not order a referendum, then within the 30 day period, a petition may be presented to the corporate authorities requesting that the question of the annexation of the described territory be submitted to the electors of the annexing municipality . . . . The corporate authorities shall

submit this question to the electors at the next general municipal election, or at a special election to be held within 90 days after the referendum election is ordered.

Bridgeview argues that since Oak Lawn did not order the referendum until May 26, 1964, (six months after the adoption of the ordinance) its ordinance is nugatory.

We believe that the determinative factor is the status of the Bridgeview ordinance on the day it was adopted. In City of East St. Louis v. Touchette, 14 Ill2d 243, 249, 150 NE2d 178, it was said:

> . . . no proceeding for the annexation of a territory, or a part thereof, to any other municipality *may be legally initiated* after a petition for the organization of said territory into a city has been filed . . . (Emphasis added.)

It is indisputable that when the Bridgeview ordinance was adopted not only had the Oak Lawn petition been filed but a valid court order had been entered approving Oak Lawn's annexation. While further procedures were required by statute, the time for the performance thereof had not yet expired. Subsequent alleged inadequacies in procedure cannot legalize Bridgeview's illegal action.

The Circuit Court's order validating Bridgeview's annexation is hereby reversed and the cause remanded with directions to enter a judgment of ouster against defendant Bridgeview.

Reversed and remanded.

McCORMICK, P. J. and ENGLISH, J., concur.